19508

STATE of South Carolina ex rel. Daniel R. McLEOD, its Attorney General, Appellant, v. MURRELL'S INLET CAMP AND MARINA, INC., Respondent.

(192 S. E. (2d) 199)

*Messrs. Daniel R. McLeod, Atty. Gen.,* and *Hubbard W. McDonald, Jr., Asst. Atty. Gen.,* of Columbia, and *John C. Thompson,* of Conway, *for Appellant,*

*Messrs. Grimes, Hinds & Cowan,* of Georgetown, *for Respondent,*

October 25, 1972.

BRAILSFORD, Justice:

This controversy between the State of South Carolina, plaintiff, and Murrell's Inlet Camp and Marina, Inc., defendant, concerns approximately two acres of marshland at Murrell's Inlet, South Carolina, which have been filled by the defendant to the approximate height of its contiguous land on the west, which is part of a subdivision fronting on what is now U. S. Highway 17. The State claims the land as the owner of "all lands lying between the mean high water mark and the mean low water mark . . . in the Murrells Inlet area of Georgetown County, South Carolina." The answer of the defendant alleges that the land in dispute lies above the mean high-water mark of the Atlantic Ocean, and is not tidelands, which comprise only "lands lying between the mean highwater mark and the mean low water mark or submerged lands, *i. e.,* lands lying below the mean low water mark of the Atlantic Ocean."

The answer pleads five additional defenses, some of which rest upon rather complicated facts. However, by stipulation of the parties, the only issue submitted to the jury in the court below was that raised by defendant's denial of the State's allegation that the land is tideland. "That is, the jury was to find whether or not the two (2) acres was covered by waters of the average high tide in its natural state." It was agreed that if the jury resolved the issue in favor of the State, the remaining questions would be referred; if otherwise, judgment would be entered for the defendant. The jury found that the land was above the waters of mean high tide, and the State has appealed upon exceptions which raise but two questions, (1) Whether the court erred in refusing its motion for a directed verdict; and (2) whether the court erred in excluding two plats from evidence.

That the land in question in its natural state was salt marsh is plain beyond quibble. Pictures in evidence so depict it. A number of documents with

which defendant is connected so characterize the fifty-acre tract from which it was carved, including old plats and the will by which this tract was devised to one C. A. Wilcox, under whom defendant claims. Defendant's deed describes the land as irregularly shaped, 372' x 350' x 400' x 100', and bounded on all sides by marshland except that the one hundred foot western boundary was described as defendant's adjacent property, referred to above.

However, these pictures and documents, upon which the State largely relies in urging its entitlement to a verdict by direction, do not resolve the critical issue of whether the area in dispute was covered twice daily by mean or average high tides, or whether it was covered only by spring tides, occurring at the new moon and the full moon of each synodic month, and by other unusually high tides of irregular occurrence. Land ordinarily covered by tides occurring daily is referred to in the record as low mash and is claimed by the State as tidal land. Land less frequently flooded but covered by spring tides and other unusually high tides is referred to as high marsh and is not claimed by the State. Apparently, credible witnesses for the State testified that the land in dispute in its natural state was overflowed twice daily by ordinary high tide. An equal number of apparently credible witnesses for the defendant testified that it was not. The issue arising on this conflict in the testimony was peculiarly for the jury, and the court did not err in refusing the State's motion.

The second question is whether the court erred, to the prejudice of the State, by refusing to admit in evidence a 1921 subdivision plat and a 1929 revision of it. Defendant's property (not in dispute in this action) is included in the subdivision. It measures one hundred feet on U. S. Highway 17 and runs back two hundred feet to "Murrell's Inlet Marsh," from which, like all of the lots in the subdivision, it is separated by a line designated on the plat as "High Water Mark." At this point the property is contiguous to the land in dispute, which lies within the area designated by the plat as marsh.

The plats were made by one S. D. Cox from surveys made by him. S. D. Cox, Jr., a registered surveyor, who had been associated with his father in the latter's lifetime, produced and identified them as having come from his father's records.

These plats were objected to on the ground that the line platted between the subdivision lots and the marsh was irrelevant to the location of mean high-water mark, and upon the ground that the plats were hearsay. The trial judge sustained the objection on both grounds. We need not pursue the second, because we are satisfied that the exclusion of the plats on the first was well within the discretion of the trial judge.

The maps do not purport to locate mean high-water mark, and do not discriminate between high and low marsh in any manner. They simply depict marshland as contiguous to an upland grove for the full length of the subdivision, with a line between the two designated as high-water mark. This conforms to the testimony of the witness Cox that the accepted way of establishing the "line of demarcation" was "(w)here the marsh grass meets the hill growth, such as Myrtle bushes or pine trees or cedar trees. . . ." It must be remembered that this is not a boundary dispute between a lot purchaser and the developer of the subdivision, who also claimed title to the contiguous marshland, as to the location of the purchaser's eastern boundary. In such a case, the true location on the ground of the surveyed line would be controlling, and the plat would furnish important evidence on the issue. Here, the controversy is as to the title to marshland admittedly lying east of the subdivision lots, and the issue is whether in its natural state this area of approximately two acres was or was not flooded by the waters of mean high tide. Since the record is barren of any evidence by which the jury could possibly correlate the platted line to this issue, the conclusion of the judge that the plats were irrelevant is abundantly supported.

Stated another way, the plats add nothing to the conclusive evidence that the land in dispute lies in Murrells Inlet marsh adjacent to the subdivision shown on the Cox plats. If admitted, the plats would have been merely cumulative on this point, and, since they bear on no other, their exclusion could not have prejudiced the State.

Affirmed.

Moss, C. J., and LEWIS, BUSSEY and LITTLEJOHN, JJ., concur.